IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SEATTLE, | ) | No. 80745-5-I |
| | ) | |
| Petitioner, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DEREK KEVIN MAKASINI, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — On January 31, 2011, Derek Makasini was sentenced in Seattle Municipal Court for a gross misdemeanor offense. The court suspended a portion of his sentence for a period of five years, placed him on probation and ordered him to comply with numerous conditions. More than four years after the date of the first alleged violation of the terms of his sentence, and more than three years after an alleged new criminal offense, the probation office sought a bench warrant ex parte. The bench warrant was granted on October 14, 2015 and served on May 6, 2018, over seven years after sentencing. The City claimed that the period of supervision was tolled by the issuance of the bench warrant in 2015 and defense objected based on the plain language of RCW 35.20.255.

The municipal court ruled that the warrant issued ex parte tolled the period of probation and imposed a jail sanction for the violations. Makasini appealed to the superior court, which reversed the municipal court. The superior court

concluded the statute is not ambiguous and only provides for tolling if a probationer fails to appear at a hearing. This court accepted discretionary review and we affirm the superior court.

FACTS

Derek Makasini entered a guilty plea in Seattle Municipal Court to one count of physical control of a motor vehicle while under the influence on January 31, 2011. He was sentenced to 365 days jail, of which 363 days were suspended for a period of five years on conditions which included: obtaining a drug and alcohol evaluation and completing any recommended treatment, attending a victim impact panel, compliance with supervision by the probation department, and not having any new criminal law violations. The order also required Makasini to report to the probation department within 36 hours of his release from jail.

On October 12, 2015, the Probation Services Division submitted a request for bench warrant based on allegations that Makasini never reported to the probation office after release in 2011 and had been charged with misdemeanor harassment for an incident on February 10, 2012. The next day, the trial court issued a bench warrant for Makasini ex parte. Makasini was arrested on the warrant on May 6, 2018. The following day, the City of Seattle (City) filed a notice of probation violation alleging Makasini had failed to report to probation and that he had committed a new criminal law violation (the February 2012 offense). The probation department later reported additional alleged violations including failure to complete treatment, failure to attend a victim impact panel, and that Makasini had committed other new criminal law violations. Makasini was released from

custody. The court set a review hearing that was ultimately continued four times before the alleged violations were addressed.

On December 11, 2018, the City filed an amended notice of probation violations which alleged Makasini had failed to report to probation, did not complete treatment, had not attended the victim impact panel, and committed another new criminal law violation in addition to the February 2012 offense. A hearing was held January 29, 2019 to address concerns raised by Makasini that he framed as jurisdictional.[1] The municipal court ruled that RCW 35.20.255 authorized tolling between the date that the bench warrant issued in 2015 and the date Makasini was booked into jail on the warrant in 2018. Thus, the court determined it still had authority to revoke Makasini's probation if the alleged violations were found to have occurred. On March 1, 2019, the trial court found that Makasini had committed all of the violations alleged by the City and revoked 60 days of his suspended sentence as a sanction.

Makasini brought a RALJ[2] appeal to the superior court, arguing the municipal court did not have authority to revoke his suspended sentence as tolling was never properly triggered. The superior court agreed, concluding RCW

---

[1] Defense, the City, and the Municipal Court all termed the issue as one of jurisdiction in the proceedings in the trial court. Jurisdiction of municipal and district courts is established by a number of other statutes. See Titles 3, 35 and 35A RCW. Similarly, the power of courts of limited jurisdiction to suspend criminal sentences is also statutory. See RCW 3.66.067-069 and RCW 3.50.320-.340.

The question before us is not whether the municipal court had jurisdiction to hear a physical control probation matter, but whether its authority to impose sanction had expired or been extended by function of tolling under RCW 35.20.255.

[2] Under the Rules for Appeal of Decisions of Courts of Jurisdictions (RALJ), an aggrieved party may appeal a final decision of a court of limited jurisdiction to the superior court of the county in which the court of limited jurisdiction is located. RALJ 1.1, 2.1-2.3.

35.20.255 is unambiguous and only allows tolling when a probationer fails to appear at a court hearing. This court granted discretionary review.

ANALYSIS

Washington courts of limited jurisdiction are established by the legislature. See Young v. Konz, 91 Wn.2d 532, 540-42, 588 P.2d 1360 (1979). "Therefore, a municipal court's jurisdiction must be granted by statute." City of Spokane v. Marquette (Marquette II), 146 Wn.2d 124, 129, 43 P.3d 502 (2002). Superior courts and inferior courts do not have inherent authority to suspend or defer a sentence. Id. "This power derives entirely from the legislature." City of Spokane v. Marquette (Marquette I), 103 Wn. App. 792, 798, 14 P.3d 832 (2000), reversed by, 146 Wn.2d 124. There are four grants of probationary power in our state. Marquette II, 146 Wn.2d at 129. The statute at issue here, RCW 35.20.255, applies to municipal courts of cities with a population above 400,000.

The parties' dispute focuses on the following sentence from RCW 35.20.255, which was added through legislative amendment in 2001:

> A defendant who has been sentenced, or whose sentence has been deferred, and who then fails to appear for any hearing to address the defendant's compliance with the terms of probation when ordered to do so by the court, shall have the term of probation tolled until such time as the defendant makes his or her presence known to the court on the record.

This case may be resolved exclusively by means of statutory interpretation which is a question of law reviewed de novo. State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). The court's objective when interpreting a statute is to determine the legislature's intent. State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005),

- 4 -

superseded by statute, State v. Conover, 183 Wn.2d 706, 355 P.3d 1093 (2015). The best indication of legislative intent is the language enacted by the legislature, so if the meaning of a statute is plain on its face, the interpreting court "'give[s] effect to that plain meaning.'" Ervin, 169 Wn.2d at 820 (quoting Jacobs, 154 Wn.2d at 600). The plain meaning of a statute is to be discerned from the ordinary meaning of the language under scrutiny, in addition to the context of the statute in which the language is found, related provisions, and the statutory scheme as a whole. Jacobs, 154 Wn.2d at 600.

If there are multiple reasonable interpretations of a statute's plain meaning, it is ambiguous. State v. Swanson, 116 Wn. App. 67, 70, 65 P.3d 343 (2003). In instances of ambiguity as to a statute's meaning, then the court relies on principles of statutory construction, legislative history, and relevant case law to decipher the legislative intent. State v. Manuel, 14 Wn. App. 2d 455, 461, 471 P.3d 265 (2020). "After such analysis, if a criminal statute still remains ambiguous, the rule of lenity requires courts to construe the statute strictly in favor of the defendant." Id.

The plain meaning of RCW 35.20.255 is clear and not subject to numerous interpretations. It is common in a case of statutory interpretation to have two (or more) competing interpretations presented to demonstrate the ambiguous nature of the statute. See State v. Evans, 177 Wn.2d 186, 298 P.3d 724 (2013); see also State v. Dennis, 191 Wn.2d 169 (2018); State v. Engel, 166 Wn.2d 572, 210 P.3d 1007, 421 P.3d 944 (2009). However, the City has not put forth an alternative interpretation of the plain meaning of the statute, but rather argues that case law

does not support Makasini's interpretation, despite its acceptance by the superior court.

In his briefing, Makasini advances the interpretation that the plain meaning of the statutory language "fails to appear for any hearing to address the defendant's compliance with the terms of probation when ordered to do so by the court" is that tolling only begins "when a court orders a defendant to appear at a hearing to address the allegations of a probation violation, and then the defendant fails to appear." The City did not engage in a plain meaning analysis of the statute and instead focused its argument on case law. Its arguments to the superior court on RALJ appeal were similarly limited.

The City avers that numerous cases indicate supervision is tolled while a probationer is on warrant status. However, those cases are not controlling as they deal with different courts and distinct statutes entirely, all of which are silent on tolling. See State v. V.J., 132 Wn. App. 380, 132 P.3d 763 (2006) (holding Juvenile Justice Act of 1977[3], which had no express tolling provision, confers statutory authority to toll juvenile probation while on warrant status); State v. D.D.-H., 196 Wn. App. 948, 385 P.3d 283 (2016) (holding Juvenile Justice Act of 1977 provides a juvenile's probation tolled while on warrant status by operation of law); State v. Robinson, 142 Wn. App. 649, 175 P.3d 1136 (2008) (holding it was proper to toll a 10-year suspended sentence when the defendant had absconded from the jurisdiction).

---

[3] Ch. 13.40 RCW.

The City's primary argument is that Marquette II is binding authority on the question presented on appeal. 146 Wn.2d 124. However, Makasini correctly points out that Marquette II dealt with a prior version of RCW 35.20.255 which did not include the amended language at the heart of this case. Id. at 130. The Supreme Court acknowledged in Marquette II that the legislature's amendment of RCW 35.20.255, which was prompted by the earlier court of appeals opinion in the case, effectively limited the applicability of its holding to a very small class of probationers. Id. "The Court of Appeals decision in this case prompted the legislature to add . . . [the language at issue in the instant appeal] to the statutory provisions applicable to courts of limited jurisdiction." Id. at 130. The court then focused its analysis on interpretation of another statute.

After careful review of the procedural history of Marquette's case and the various holdings of the two opinions, Makasini's argument is the more persuasive of the two before us. Specifically, in briefing on the RALJ appeal, Makasini provided the following discussion of Marquette II:

> [Marquette II] has broader language but it is not applicable to this situation. First, the case cites to the above [amended version of the] statute and says that it does not apply because it post-dated the events of the case. 146 Wn.2d 124, 130, 43 P.3d 502, 505 (2002). Second, [Marquette II] noted a tolling absent a statutory directive, Id. at 134. However, because the power to suspend sentence, impose terms and punish violations of those terms derives from statute and must be granted to courts of limited jurisdiction by the legislature, Id. at 129, a statutory change would nullify this holding to the extent that it was inconsistent. Because the power to suspend sentence, impose terms and punish violations of those terms derives from statute and must be granted to courts of limited jurisdiction by the legislature, Id. at 129, a statutory change essentially nullified this holding to the extent that is was inconsistent.

Makasini accurately asserts that Marquette II does not control the interpretation of the current amended version of RCW 35.20.255.

The superior court was correct in its conclusion that RCW 35.20.255 is unambiguous. The language in question was added by the legislature in direct response to the Marquette I opinion while the case was pending review by the Supreme Court. The legislature addressed the concerns raised by prosecutors and other criminal justice stakeholders[4] in response to Marquette I by providing a specific triggering event to begin tolling of a probationary period: failure to appear for a court ordered hearing. If the government[5] wishes to preserve the period of supervision for a probationer by means of tolling, the procedure provided by the legislature requires that it first set a hearing and summon the probationer before the court. If the probationer appears for the hearing, the court may exercise its statutory authority as to the imposition of sanctions after the alleged deficiencies or violations are addressed. If the probationer fails to appear, a bench warrant is properly issued and tolling is triggered.

---

[4] Though we need not go beyond the plain meaning analysis to resolve the question before us, it is illuminating that the final bill report for the 2001 amendment to RCW 35.30.255 indicates the change was made in response to concerns raised by prosecutors. See FINAL B. REP. ON ENGROSSED SUBSTITUTE S.B. 5970, 57th Leg., Reg. Sess. (Wash. 2001)

[5] The prosecuting and supervising authorities here and in Marquette are divisions of city government and the cases were heard in municipal court. The statute at issue in this appeal, chapter 35.20.255 RCW, applies to municipal courts in cities with population above 400,000. Statutes addressing the authority of municipal courts in cities smaller than 400,000 are found in the chapter on district courts. Title 3 RCW. The tolling language applicable to suspended sentences originating in district courts and municipal courts in cities with population below 400,000 is identical to the language in RCW 35.20.255. See RCW 3.66.068(3) and 3.50.320.

As such, our analysis applies to all courts of limited jurisdiction, which includes district courts where the prosecuting authority is the state and the supervising entity may be a division of county government. Thus, we refer to the prosecuting and supervising authorities broadly as the government, lest there be any question as to the applicability of this opinion to district court matters or those arising in smaller cities addressed by RCW 3.66.068 and 3.50.320.

In Marquette II, the Supreme Court accepted the argument the City of Spokane had offered throughout the litigation that extension of the period of supervision by means of tolling serves the purpose of a suspended sentence: to ensure compliance with services intended to rehabilitate the defendant. The City of Seattle makes similar arguments here based on that holding. However, it fails to address how years of government inaction after easily identifiable incidents of alleged noncompliance is acceptable given that important legislative purpose. Here, the Probation Services Division waited over four years from the first alleged violation (failure to report to probation within 36 hours of release from jail) and over three years after the second alleged violation (February 2012 criminal charge) before notifying the sentencing court of Makasini's purported failure to comply.

The crux of the government's argument in both Marquette cases was that, absent tolling, a probationer could simply avoid contact with the court or the supervising agency and effectively run down the clock on their suspended sentence as a means of evading sanction. This case demonstrates the corollary offense to the legislative purpose of RCW 35.20.255: government inaction impermissibly extending the period of supervision well beyond the timeframe intended by our lawmakers. If the government wishes to exercise its statutory authority to supervise a probationer's completion of rehabilitative services, and seek sanctions for noncompliance, it is reasonable to expect that it must also bear the responsibility of complying with the process as set out by the statute. This means it must set and summon the defendant for the prerequisite court hearing before tolling may commence.

We find that RCW 35.20.255 is unambiguous and that the plain meaning interpretation presented by Makasini is proper. We affirm the superior court's reversal of the municipal court ruling.

WE CONCUR: